## FRED MILLER BREWING CO. v. COON-ROD. (No. 6544.)

(Court of Civil Appeals of Texas. San Antonio. April 13, 1921. Rehearing Denied May 11, 1921.)

**1. Appeal and error ⬤⇒907 (3)—Evidence presumed to support finding in absence of statement of facts.**

In the absence of a statement of facts to the contrary, the appellate court will regard every finding made as proven, and will indulge in every presumption necessary to support the finding and judgment of the trial court.

**2. Contracts ⬤⇒137 (4)—Exclusive selling contract held not susceptible of severance.**

Contract between manufacturer and dealer giving dealer the exclusive privilege of sale in described territory and prohibiting dealer from selling any but manufacturer's product in such territory *held* not susceptible of severance as against contention that illegal provisions violating the anti-trust statute could be eliminated without affecting validity of other portions.

**3. Monopolies ⬤⇒17 (2) — Contract between manufacturer and dealer given exclusive territory held violative of state anti-trust statutes.**

Contract between manufacturer and dealer giving dealer exclusive right of sale in certain territory and obligating him not to sell similar goods of any other manufacturer in such territory *held* in violation of the state anti-trust statutes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7818).

**4. Monopolies ⬤⇒17 (2)—Manufacturer's contract with dealer held void as in restraint of trade, though dealer disregarded contract by selling similar goods.**

Contract between manufacturer and dealer giving dealer exclusive territory and obligating him to sell none but the manufacturer's product therein *held* void as in restraint of trade in violation of the state anti-trust statutes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7818), even though dealer disregarded the contract and sold similar goods of other manufacturers without manufacturer's knowledge.

**5. Equity ⬤⇒65 (1)—Closes its doors to both parties to illegal transaction.**

The doctrine of "he who comes into equity must come with clean hands" will not be applied to enable a party to an illegal contract to set up his own wrong to avoid his obligations, but in such cases the court will close its doors to both parties.

**6. Contracts ⬤⇒138 (2)—Voluntary execution of illegal contracts creates enforceable rights.**

Illegal contracts are void in the sense that they cannot be enforced in a court of justice and therein support a remedy, but, when executed by the voluntary acts of the parties, new enforceable rights may be created.

**7. Compromise and settlement ⬤⇒7 — Settlement between parties to illegal contract enforceable if it can be enforced without the aid of the illegal transaction.**

The settlement between parties to an illegal contract made after execution of the contract will be enforced if it is enforceable without the aid or assistance of any part of the illegal transaction.

**8. Contracts ⬤⇒140—Maker of check in settlement of indebtedness due on illegal contract liable for amount thereon notwithstanding illegality of contract.**

Where a dealer indebted to manufacturer for goods delivered under a contract which was void because in restraint of trade in violation of Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7818, gave manufacturer his check in settlement of indebtedness in order to procure possession of insurance policy deposited with manufacturer as security and after obtaining possession thereof stopped payment on check, the manufacturer could recover amount of check notwithstanding illegality of the contract; its cause of action being on the check, and not the contract.

Appeal from District Court, Tarrant County.

Suit by the Fred Miller Brewing Company against E. D. Coonrod. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

E. H. Ratcliff, of Fort Worth, for appellant.

Bryan, Stone & Wade, of Fort Worth, for appellee.

COBBS, J. Appellant, a Wisconsin corporation, sued to recover the sum of $1,535.-60 from E. L. Coonrod, appellee, who, it was alleged, owed it a certain check for that amount issued to appellant, drawn on the Farmers' & Mechanics' National Bank of Fort Worth, Tex. The bank refused payment thereof, whereupon appellant brought its suit against appellee, Coonrod, for payment of the check, and caused a writ of garnishment to be issued and served upon said bank. The bank answered, admitting indebtedness sufficient to pay the check.

The original petition charged that the check was given in part payment and settlement of controversies between appellee, Coonrod, and appellant, which differences had been the cause of a previous suit between the same parties in the district court of Tarrant county, Tex., and pending at the time of the settlement and issuance of the check. Appellant performed the terms of the agreement and delivered valuable property then in its hands, held as collateral security.

The appellee, Coonrod, filed his answer, admitting the execution and delivery of the check, and that he had ordered the payment of said check stopped, because it was issued

under duress, threats, and undue influence on the part of appellant; that the undue influence consisted of the fact that, unless the check be issued as demanded and money paid, appellant would withhold from him the possession of a certain life insurance policy which it then held as security for a loan theretofore made to him by appellant; that the $1,535.60 was demanded before appellant would turn over the life insurance policy, security for the amount represented as due and owing by him to appellant under a prior contract relating to the sale by appellant to him of a certain beverage known as "Vivo," which was not due, and there was no right at that time to demand payment.

Appellee, Coonrod, further pleaded that he was not liable to pay said check because the same had been issued in payment of an indebtedness which accrued under a contract by and between appellant and himself, void and unenforceable because in violation of the anti-trust statutes and anti-monopoly statutes of this state. He also, by reconvention, sought to recover damages against appellant for unlawfully causing the issuance of the writ of garnishment.

This case was tried without the intervention of a jury, and the court filed findings of fact and conclusions of law too lengthy to copy, but we will set out hereafter such portions as are deemed material. There is no statement of facts filed, and the correctness of the facts found by the trial court are challenged by neither party. The court found there was no duress that compelled the appellee to sign the check. The appellant challenged the conclusions of law and the judgment of the court upon the facts, or that there was any particular territory given and agreed upon prescribing the place of sale. It may be said that all the facts involved otherwise were found in favor of appellant. The court found to the effect:

"That the contract in controversy was void and unenforceable in any court in this state because in violation of the anti-trust statutes; that the check had been issued in compliance with the terms of a settlement for a debt accruing by reason of the operation of said void contract and said plaintiff could not recover on said check. He also found that the method of handling the beverage known as 'Vivo,' its transportation, sale, and resale under the contract, did not constitute interstate commerce, and that the parties to said contract had not waived its provision relative to the restriction on the purchase and sale of said beverage, but that the terms of the settlement of all matters and things in controversy between the parties at that time and in compliance with the terms of which settlement the said $1,535.60 check was issued were, because of the operation of the anti-trust statutes, void and unenforceable, and that plaintiff could not recover the amount of said check and could not force a restoration of the property of plaintiff received by said Coonrod under the terms of the settlement, but that in all other respects, and leaving out of the consideration the anti-trust statutes, the settlement agreed upon by the parties was valid, binding, and enforceable."

[1] Because, the territory in the contract is left blank, and the entire contract itself being introduced in evidence and before the court, appellant contends there can be no presumption, beyond the specific terms thereof, that there was a word of testimony supplying that defect. That will not meet the questions, for the court may also indulge in inferences, not imaginary, but real, in support of the judgment. The contract itself showed that appellee was doing business in Fort Worth and a resident there. The court found that his life insurance policy, given as security for a loan, was surrendered in pursuance with the settlement, and certain fixtures were surrendered to appellee, and appellee delivered to appellant an automobile truck that had been in use for the business in that territory. No other deduction can be drawn but that the court had evidence before it to show the territory in Texas where this contract could apply. As the territory is left blank, it was an obvious omission not regarded of any consequence by the parties themselves who acted on it. Appellee had, prior to the contract, been doing the same kind of business in same territory with appellant. It is too well settled now by authority, in the absence of a statement of facts to the contrary, the court will regard every finding made as proven and every presumption indulged in that is necessary to support the finding and judgment of the trial court; that is to say, there was sufficient testimony introduced to support it, though not set out. No additional findings were requested nor any exceptions taken to the findings as made because not full enough. Oldham v. Medearis, 90 Tex. 506, 39 S. W. 919; Pugh v. Werner, 166 S. W. 698; Gardner v. Watson, 76 Tex. 25, 13 S. W. 39; Producers' Oil Co. v. Snyder, 190 S. W. 514; Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852; Paden, Adm'r, v. Briscoe, 81 Tex. 563, 17 S. W. 42; Producers' Oil Co. v. Snyder, 190 S. W. 516. In Oldham v. Medearis, supra, opinion by Mr. Justice Denman, the court said:

"In the findings of fact should be stated only the facts established by the evidence, and not the evidence from which the court finds such facts. A fact stated by the court in such findings must, in the absence of a statement of facts, be presumed to have support in the evidence adduced on the trial, just as would the verdict of a jury in a like case. The presumption of law is in favor of the correctness of the action of the trial court, and it is incumbent upon the party seeking revision of such finding in the appellate court to bring up the evidence in the mode prescribed by law."

The chief assignments are that the court erred in holding the contract between the

parties void and unenforceable because in violation of the anti-trust statutes in Texas, and contend that it does not violate the law because it does not show any restricted territory. The clause in the contract which the court found void was:

"Territory: ———. In consideration of granting the purchaser the exclusive privilege to sell in the territory aforesaid, the purchaser agrees that during the continuation of this contract he will neither sell nor be directly or indirectly interested in the sale of any nonintoxicating cereal beverage other than that of this company."

As the court correctly found the contract did not constitute interstate commerce, it simplifies and reduces the question down to whether it violates the anti-trust statute of Texas.

It will not be overlooked that in giving the exclusive privilege to appellee to sell in the particular territory he was required to agree on his part that "he will neither sell nor be directly or indirectly interested in the sale of any nonintoxicating cereal beverage other than that of the company."

[2] The contract is not susceptible of severance, as appellant insists, so that it could be held the clause granting exclusive privilege of sale in no prescribed territory, and not to sell other beverages under consideration at the time the contract was made, be eliminated so as to take out the illegal part and then enforce the contract in part in respect to the so-called legal part. There can be no question that at the time it was made, it was made in respect to the exclusive agency and sale of Vivo in a prescribed territory. This contract prohibited Coonrod from selling any nonintoxicating beverage except that manufactured by appellant, as it correspondingly obligated appellant not to · sell its product to any other person in the territory. It provided for the purchase, sale, and transportation, as well as the method of handling the beverage, mutually understood, agreed upon, and binding upon both parties.

[3, 4] The seller was obligated to sell only to appellee, giving him the sole privilege to sell in the territory, and appellant agreeing to sell to no other, and the appellee, during its terms, neither to sell or be directly or indirectly interested in the sale of any nonintoxicating cereal beverage other than appellant's company, which is an illegal agreement so complete in all its parts as to come under the condemnation of our anti-trust laws, declared so by the numerous decisions on the subject. The mere statement of the case presents its complete illegality and utter disregard of Texas laws. Title 130 of the Revised Civil Statutes (Vernon's & Sayles). See cases cited thereunder. Such restraint is contrary to the freedom and liberty under the form of our government and her free institutions in respect to trade, it makes no difference in what form it clothes itself or what guise it assumes. Brenham v. Water Co., 67 Tex. 561, 4 S. W. 143; Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Segal v. McCall Co., 108 Tex. 59, 184 S. W. 188; Caddell v. J. R. Watkins Med. Co., 227 S. W. 229.

[5] It would make no difference whatever that appellee was disregarding the contract and selling similar goods, of which appellant had knowledge. It would not take from the contract the taint of illegality. On the doctrine of coming into court with clean hands, see 4 A. L. R. 63, 64, 80, under the subject, "He who comes into equity must come with clean hands." Still the courts do not by that rule sanction or approve the conduct of one who has engaged in such business, who comes in court and sets up his own wrong to avoid his obligations. It simply closes its doors to both. Appellant's contention is, if it can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act incidentally appears, and may be important even as explanatory of other facts in the case, he may recover. In other words, when fully executed and suit brought for the purpose of its enforcement, the contention is the courts will recognize and enforce any new contract right or title resulting from its execution when the illegal part is not required to aid in the recovery, upon which doctrine he makes the third assignment or error and challenges the holding of the trial court in holding that the check is not enforceable, because it represented a settlement of the debt founded upon an illegal contract in violation of the anti-trust laws of Texas. And the proposition made upon it is that such check representing a settlement of certain matters in controversy between them is such a demand as requires no aid from any illegal transaction to establish his case, and, such being the case, the illegality of the original contract cannot affect the right to recover.

It is strenuously contended by appellee that, the check being given for the exact amount due on the illegal contract, all other facts concerning the settlement of an illegal contract are not eliminated, the effect of which contention is to treat the matter as though there had been no settlement of other controversies out of which the check came into existence, but just as though the check represented the illegal transaction necessary to be shown to recover or that the illegality of which consideration might be shown to defeat its recovery.

The appellant, on the other hand, contends that the check represents not only the settlement of controversies between the parties, but the payment of the debt, and needs no portion of the illegal contract to aid; that the case was complete when it pleaded the execution and delivery of the check and the consideration for the issuance thereof; that

the original contract was obliterated by the terms of settlement and whatever obligations might have arisen under it had been executed. When parties enter into illegal contracts they are alike unfavored. The courts are no more in favor of aiding the one to enforce such a contract than they are disposed in favor of the one who by such a plea uses it to escape his obligation to the one with whom he was linked to violate the law. As said in Hall v. Edwards (Com. App.) 222 S. W. 169:

"Plaintiff in error not seeking the enforcement of the contract, and not invoking it to sustain a remedy, its illegality is no defense. To permit this defense, under the facts herein, would be to create a right or title in defendant in error dependent entirely upon such contract. It would, in effect, be to enforce the contract on her behalf, enabling her to reap a benefit thereunder. The same principles which govern courts in declining to enforce an illegal contract in aid of a plaintiff's title inhibit its use to create a title in a defendant. Wooden v. Shotwell, 24 N. J. Law, 789."

[6, 7] As to use of the words "void" and "voidable" see Downs v. Blount, 170 Fed. 15, 95 C. C. A. 289, 31 L. R. A. (N. S.) 1087. Illegal contracts are "void" in the sense that they cannot be enforced in a court of justice and will not support a remedy. The use of the word "void" often tends to confusion, in the sense that they confer no rights, but they can be executed by the voluntary acts of the parties, and when so executed confer actual and irrevocable rights. Hall v. Edwards, supra (Com. App.) 222 S. W. 168. In such cases suits may be brought for their enforcement and the courts will recognize and enforce such new contract, right, or title which the parties themselves execute without the aid of the court. They bind themselves by a new executed contract, into which transaction no part of the original transaction enters. While there seems to have been some confusion in the decisions, in the late case of Hall v. Edwards (Com. App.) 222 S. W. 167, the entire subject has been gone over and discussed by Justice Sonfield of the Commission of Appeals, and approved by the Supreme Court. In that opinion he reviews and cites a number of cases bearing on the subject. The test is whether or not the settlement between the parties resulted in the execution of such an obligation as that it shall be regarded as enforceable without the aid or assistance of any part of the illegal transaction, and, if so, it is enforceable. De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363; 2 Corpus Juris, vol. 13, p. 502, par. 445; Simon v. Garlitz, 63 Tex. Civ. App. 172, 133 S. W. 461; Bishop v. Japhet, 171 S. W. 499; Haswell v. Blake, 90 S. W. 1125; Wegner v.

Biering, 65 Tex. 511; Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; Hall v. Edwards (Com. App.) 222 S. W. 169; Willard v. Knoblauch, 206 S. W. 734.

[8] The court favors neither party to this transaction or like transactions. It is perfectly apparent from appellee's statement that he entered into the agreement by way of the settlement of controversies to induce the surrender to him of a life insurance policy. He delivered two checks in pursuance thereof, so that he could pay the one not connected with the illegal contract, and defeat the other by setting up his own illegal participation violating the law of his own state against restraint in the freedom of trade, and condemnation of trusts and monopolies generally. Having made and executed his check for settlement in pursuance with his own purpose and design, he thereby relieved appellant from the necessity of being compelled to use an illegal contract to recover. He cannot in turn set up his own wrong to defeat the recovery, when no part of the illegal contract was required by appellant to aid in its suit.

For the reasons given, the appellant has shown a good cause of action on the check sued on. It is therefore the opinion of this court that the judgment of the trial court be reversed and here rendered in favor of appellant against appellee for the sum of $1,535.60, with 6 per cent. interest from the 25th day of March, 1919, the day the payment was refused.

Reversed and rendered.