GEORGE MEDEARIS AND WIFE V. H. B. GRANBERRY ET AL.

Decided February 1, 1905.

**1.—Contract—Duress.**

The duress sufficient to avoid a contract may arise out of a threat against the child of the party seeking to avoid it. See plea held to present such issue although general in its allegations and not using the term duress.

**2.—Contract—Public Policy—Agreement not to Prosecute.**

A contract in consideration of an agreement by the promisee not to prosecute for an offense against the penal laws of the State is contrary to public policy.

**3.—Illegal Contract—Executed or Executory.**

The fact that a conveyance of land was made on a consideration prohibited by public policy may be urged as a defense by the grantor to an action by the grantee to recover the land upon such conveyance, under which possession had never been surrendered. Hoeser v. Kraeka, 29 Texas, 450; DeLeon v. Trevino, 49 Texas, 88, discussed.

Appeal from the District Court of Travis County. Tried below before Hon. V. L. Brooks.

*O. Dickens* and *A. S. Phelps,* for appellant.—The court erred in entering judgment in this cause on the verdict of the jury in that the same was and is contrary to both the law and the evidence and in the very face of the evidence in this: the undisputed testimony in the case shows that the instrument from defendants Medearis and wife to Granberry was the result of threats made by the said Granberry to defendants to the effect that he would send defendants' son to the penitentiary if they did not deed him said land, which was out of their homestead tract and the said deed was and is null and void because involuntary on the part of said grantees who are and were husband and wife, and the property in said alleged deed sought to be conveyed involved the homestead of defendants and said deed shows, and the evidence introduced shows a contract, which contemplates a commission of crime, and said threat of said criminal prosecution if said paper was not executed was a crime on the part of plaintiff, and if it was consummated it involved him in crime, and said transaction, deed or mortgage, or whatever it may be called, is absolutely null and void ab initio, because contrary to public policy, against the law and in the face of the Constitution. Cohen v. Grimes, 46 S. W. Rep., 210, 18 Texas Civ. App., 327; Kirkland v. Benjamin, 55 S. W. Rep. (Ark.), 840; First Nat. Bank of Fort Worth v. Payne, 42 S. W. Rep., 736; Singer Mfg. Co. v. Ferrell, 48 S. W. Rep., 1078; Burch v. Abbott, 22 Texas Civ. App., 216, 54 S. W. Rep., 314; Lucas v. Johnson, 64 S. W. Rep., 823; James v. Fulcrod, 5 Texas, 520; Goodman v. McGehee, 31 Texas, 256; Glenn v. Matthews, 44 Texas, 405.

No briefs for appellee were on file.

KEY, ASSOCIATE JUSTICE.—H. B. Granberry instituted this suit seeking to recover nine acres of land, specifically described in his petition. The 9 acres referred to is part of a larger tract·owned by two

of the defendants, and the plaintiff sued in the alternative to establish his right to an undivided interest of 9 acres in the entire survey, and for partition between him and the defendants. Geo. Medearis and his wife, M. Medearis, Thomas Anderson and Wm. F. Caldwell were made parties defendant.

The plaintiff alleged that he had purchased from the defendants, Medearis and wife, an undivided interest of 9 acres of land out of an 80 acre survey, and that by subsequent verbal agreement between him and Medearis and wife, a partition has been agreed upon, by the terms of which he became the owner of and was entitled to recover the particular 9 acres described in his petition. Anderson and Caldwell were made parties defendant, the plaintiff alleging that they asserted some character of claim to the land in controversy. They filed an answer seeking affirmative relief, and alleging that they purchased from Medearis and wife a specified tract of 10 acres, being part of the 80 acre survey owned by Medearis and wife, but no part of the particular 9 acres claimed by the plaintiff.

The defendants, Medearis and wife, answering the pleading filed by Anderson and Caldwell, averred that the entire 80 acre survey was their homestead at the time they made the deed under which Anderson and Caldwell claimed, and that said deed was executed for the purpose of securing a debt owing by them to Anderson and Caldwell; that it was intended as a mortgage, and that the land purporting to be conveyed being part of their homestead, the instrument was null and void. Answering the plaintiff's petition, they interposed a similar plea of mortgage and homestead, and in addition thereto, pleaded as follows:

"That the defendants are now and have been for more than ten years last past in the actual, quiet and peaceable possession of all of said 80 acres of land; and the said plaintiff nor have the defendants Anderson and Caldwell, or Mrs. J. R. Granberry, administratrix, at any time paid any taxes thereon, been in possession thereof or exercised in any way any right, or ownership thereto. That said contract, understanding or agreement out of which originated said mortgage or deed, as claimed by plaintiff, was made in violation of a penal statute of Texas, to wit: same having been given in consideration that the said H. B. Granberry would not swear out a complaint and have one Steve Medearis, a son of defendants, arrested and tried for disposing of mortgaged property in Travis County, Texas, in the year 1897; and that said consideration and no other prompted the execution and delivery of said instrument, whether the same be a deed or mortgage, and said transaction between plaintiff and defendants, in, about and concerning said land and the possession thereof and said deed, if found to be a deed, which defendants deny, because the same was and was intended by all parties as a mortgage, were all in violation of law, against the well established public policy of the State of Texas, and wholly illegal and absolutely void *ab initio.*

"That defendants aver that plaintiff by force and arms and threats went to the said Steve Medearis' premises, and there required and forced the said Steve Medearis, the son of defendants herein, to get in a buggy with him, the said H. B. Granberry, and after so doing, brought

the said Steve Medearis to the house of defendants and then and there and subsequent to that time, told these defendants that he, the said plaintiff, had a valid, binding and subsisting mortgage on the crops of cotton and corn raised by the said Steve Medearis in Travis County, Texas, during the year 1897, and that the said Steve Medearis had misapplied, converted and disposed of two bales of cotton so raised by him during said year, that he then had the said Medearis in his possession on his way to Austin to have him arrested, tried and convicted and sent to the penitentiary for the wrongful disposition of said mortgaged property; and would do so unless defendants and the said Steve Medearis made arrangements then and there to pay said H. B. Granberry for his forbearance in not having said Steve Medearis arrested and prosecuted for said offense; and thereupon, these defendants told the said H. B. Granberry, that they would give him a mortgage on nine acres of said land if he would desist from said prosecution; wherefore, all of said transaction is void and illegal."

There was a jury trial resulting in a verdict and judgment for the plaintiff for the nine acres of land claimed by him, and for the defendants, Anderson and Caldwell, for the 10 acres of land claimed by them, and the defendants, Medearis and wife, have appealed.

A rigid enforcement of the rules in reference to the preparation of briefs would deprive the appellants of consideration of most of the assignments of error relied on for reversal; but as the record shows that they are so poor as to be compelled to resort to a pauper's oath in order to prosecute their appeal, this court has, in the exercise of its discretion, considered the question presented and reached the conclusion that no error was committed as between Medearis and wife and Anderson and Caldwell, but that error was committed as between the plaintiff and Medearis and wife, which error will now be pointed out.

The court instructed the jury that among other defenses pleaded by Medearis and wife was that the instrument under which the plaintiff claimed title was executed for an illegal consideration, but that there was no sufficient evidence to justify a finding for Medearis and wife on that issue, and to find in favor of the plaintiff thereon. The court also refused a special instruction, relating to the subject of duress, and to the effect that if the deed from Medearis and wife to the plaintiff Granberry was procured by a threat to the effect that if they did not execute the deed he would prosecute their son for the violation of a penal law, to find for them as against the plaintiff. The refused instruction, while not as full and accurate as it might have been, was substantially a correct statement of the law in general terms; and, in the absence of any instruction on that subject, it was error for the court to refuse to give it. The general rule is that, in order to avoid a contract on the ground of duress, the threat must be against the party seeking to avoid the contract. However, there are exceptions to that rule, and one of the exceptions arises out of the relation of parent and child. Either may avoid a contract made to relieve the other from duress. (10 Am. & Eng. Ency. Law (2d ed.), 330, and cases there cited.) The plea interposed by Medearis and wife quoted above, while not using the term "duress," and while very general in that respect, was sufficient, in the absence of

a special exception, to present that issue, and each of the plaintiffs gave testimony tending to support the theory of duress.

Aside from the question of duress, the testimony given by Medearis and wife tended to show an agreement between them and their son and the plaintiff to the effect that the plaintiff would forego his purpose to prosecute the son, if they would, in payment of a debt owing by the son, convey to the plaintiff nine acres of their land. Such contracts are contrary to public policy; and therefore illegal, upon the ground that they tend to forestall and prevent the enforcement of the penal laws of the State. In fact, in this State such an agreement might constitute a penal offense in and of itself, which fact would intensify its illegality. (Penal Code, art. 291.)

Testimony was also submitted tending to show that Medearis and wife had never delivered possession to the plaintiff, but had remained in exclusive possession themselves. It is a general and well established principle that the courts will not aid in the enforcement of illegal contracts. Nor when such contracts have been executed and the transaction fully consummated, will the courts set them aside. Whether or not the rule referred to will avail as a defense by a grantor remaining in possession who has executed a deed conveying land, is a question upon which there is a conflict of authority. (15 Am. and Eng. Ency. Law (2d ed.), 1000, and cases there cited.) The question is not free from difficulty; but we have reached the conclusion that such defense ought to be held available. It has been held in this State in more than one instance that a suit upon a promissory note may be defeated by showing that it was for a consideration growing out, or in furtherance of an illegal transaction. Seeligson v. Lewis & Williams, 65 Texas, 215, is a leading case upon that subject; and, among other things, the court there said:

"We do not, however, wish to be understood as placing the decision of this case solely on the ground last mentioned, but upon the broad and wholesome principle that, as between parties to illegal transactions, no one of them can recover for anything done or promised in carrying out the illegal enterprise. It matters not what the form of the undertaking may be, such acts, whether they consist in services or in the expenditure of money, on request, can not constitute a valid consideration."

The cases which hold that the execution and delivery of a deed makes it an executed transaction to the extent and in the sense that the courts should not go behind the deed and refuse to aid the grantee claiming thereunder, if it was made in furtherance of an illegal scheme, are not in harmony with the broad and sounder rule laid down by our Supreme Court in the language above quoted. Of course, if the deed is accompanied by or followed up with delivery of possession, then the transaction is wholly executed or completed; and the courts will not inquire into the reasons prompting the making of the deed; but when possession has not been delivered to the grantee, it seems to us that the transaction is as incomplete as where a promissory note has been executed. When parties enter into schemes that are illegal, and especially when, as in this case (if the defendants' theory be correct) one object of the scheme is to violate a penal law, and either fails to perform his part of the

agreement, the courts should not afford relief to the other party, whether such failure be to pay an agreed sum of money or to deliver possession of a tract of land. It is true, that a suit to recover a tract of land is different in form from a suit upon a promissory note; but the form of the action is of no importance in determining the application of the principle of law here involved. The law should not aid wrongdoers in the consummation of their unrighteous schemes, whether the suit be an action upon a promissory note or for specific performance of a contract to convey land, or to recover possession of land already conveyed.

In deciding this question, we have not overlooked the case of Hoeser v. Kraeka, 29 Texas, 450, in which it was held that a fraudulent vendee of personal property could sue for and recover the property from the vendor. In that case some stress was laid upon the fact that the statute of frauds condemned such sales as against creditors only; and there are decisions in other states construing similar statutes, which assign that as a reason for holding such contracts to be valid and enforceable as between the parties thereto.

We have also examined the case of DeLeon v. Trevino, 49 Texas, 89, in which it was held that a note executed by one partner to another for his share of the profits resulting from an illegal contract was enforceable. That case is vigorously criticised in an elaborate note following its publication in 30 Am. Rep., p. 106. It has been followed in some other Texas cases, referred to and distinguished in others, and referred to without approval in Wiggins v. Bisso, 92 Texas, 225.

The judgment in favor of the defendants Anderson and Caldwell will be affirmed; that in favor of the plaintiff will be reversed and the cause remanded for another trial, as between the plaintiff and the defendants Medearis and wife.

*Affirmed in part and reversed and remanded in part.*